IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| PATRIOT MANUFACTURING, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION 05-0321-WS-M |
| | ) | |
| MICHAEL and KALIE DIXON, | ) | |
| | ) | |
| Defendants. | ) | |

ORDER

This matter is before the Court on plaintiff's Motion for Preliminary Injunction Pending Resolution of Petition to Compel Arbitration (doc. 9). The Motion has been briefed and is now ripe for disposition.[1]

I.     Background.

This action stems from a civil action filed by Michael and Kalie Dixon (the "Dixons") in the Circuit Court of Clarke County, Alabama on or about April 26, 2005, styled *Michael and Kalie Dixon v. Patriot Homes of Alabama, Inc., et al.*, Case No. CV-05-074-B (the "State Court Action"). The Dixons' 31-page, 112-paragraph complaint purports to state a whopping 25 causes of action against Patriot Homes of Alabama, Inc.; Cedar Ridge Homes, Inc.; and Southridge Homes, all

---

[1]     Also before the Court are defendants' Motion to Continue Any Pending Motion Until the Court Determines Whether it Has Jurisdiction (doc. 12) and plaintiff's Motion to Exceed Page Limitations (doc. 15). In its discretion, the Court **grants** the Motion to Exceed Page Limitations and will consider plaintiff's filings in their entirety. As to the Motion to Continue, the parties' briefs make clear that the jurisdictional issue is an integral aspect of the Motion for Preliminary Injunction; therefore, any ruling on the latter Motion must necessarily address the jurisdictional issue. That being the case, it is unnecessary and impractical to "continue" a ruling on the Motion for Preliminary Injunction until disposition of the jurisdictional issue, because both are inextricably intertwined and will be decided concurrently. The Motion to Continue is therefore **moot**. Had defendants wished to present the jurisdictional issue in a more procedurally straightforward fashion, they could have filed a motion to dismiss on that basis. Defendants having chosen to raise their jurisdictional objection via an opposition brief, the Court will decide that issue in the context of the Motion for Preliminary Injunction.

arising from the Dixons' purchase of an allegedly defective mobile home in January 2004.[2]  The parties apparently are in agreement that the Dixons purchased the mobile home from a dealer named Cedar Ridge Homes, Inc. ("Cedar Ridge"), and that the mobile home had been manufactured by Patriot Manufacturing, Inc. ("Patriot").  According to the Dixons, the mobile home suffers from a plethora of deficiencies, including structural and plumbing defects, cracked and warped walls, flooring defects, electrical defects and ill-fitting doors and windows.  The Clarke County Complaint alleges causes of action against Patriot and Cedar Ridge on grounds of breach of warranty, negligence, fraud, and violation of the Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2301, *et seq.*[3]  The State Court Action remains pending at this time.

On June 2, 2005, Patriot initiated this action against the Dixons by filing a Petition to Compel Arbitration (doc. 1) in this District Court pursuant to the Federal Arbitration Act, 9 U.S.C. §§ 1 *et seq.*[4]  Cedar Ridge is not a party to this lawsuit.  The Complaint asserts that federal jurisdiction is proper pursuant to 28 U.S.C. § 1332, inasmuch as Patriot is an Indiana citizen for diversity purposes, the Dixons are Alabama citizens, and the amount in controversy exceeds $75,000, exclusive of interest and costs.  Patriot maintains that the Dixons' claims against it in the State Court Action are within the scope of an enforceable arbitration agreement (the "Arbitration Agreement") executed by the Dixons,

---

[2]      Thankfully, this Court is not called upon to address the propriety of filing a 25-count complaint in a dispute over a relatively straightforward mobile home sales transaction.  *See generally Strategic Income Fund, L.L.C. v. Spear, Leeds & Kellogg Corp.*, 305 F.3d 1293, 1296 n.9 (11th Cir. 2002) ("This court has addressed the topic of shotgun pleadings on numerous occasions in the past, often at great length and always with great dismay.").

[3]      Despite the federal cause(s) of action under the Magnuson-Moss Act, it appears that neither Patriot nor Cedar Ridge ever sought to remove the State Court Action to federal court, pursuant to 28 U.S.C. §§ 1331 and 1441.

[4]      The court file reflects that the Dixons were served with process on June 18, 2005, and that their answers were therefore due on July 8, 2005.  For reasons that are unclear, the Dixons have never filed a responsive pleading pursuant to Rule 12, but have merely filed several legal memoranda opposing Patriot's requests for arbitration and injunctive relief.  Such briefs cannot do service for a Rule 12 responsive pleading.  Accordingly, defendants are **ordered**, on or before **September 13, 2005**, to file a responsive pleading pursuant to Rule 12.

Patriot and Cedar Ridge in connection with the mobile home transaction.  The Arbitration Agreement states as follows:

> "All disputes, claims or controversies of every kind or nature that may arise between or among the Owner, Retailer, [or] Patriot ... shall be settled by binding arbitration conducted pursuant to the provisions of 9 U.S.C. Section 1, *et seq.*, and administered by the American Arbitration Association ("AAA") under its commercial Arbitration Rules .... Without limiting the generality of the foregoing, it is the intention of the Owner, the Retailer, and Patriot to resolve by binding arbitration all disputes, whether arising out of tort, contract, or otherwise, arising from, concerning or related to the Home, its design, sale, delivery, warranties, setup, repair, installation, manufacture, performance, condition, or financing or any insurance obtained in connection with the Home, including any dispute, controversy, claim or question of any nature whatsoever related to the enforceability, validity, scope or interpretation of this Arbitration Agreement."

(Petition, Exh. A, ¶ 2.)

On July 21, 2005, Patriot filed a Motion for Preliminary Injunction (doc. 9).  The Motion explains that the Dixons have pursued discovery in the State Court Action notwithstanding the pendency of this action, and that Patriot has now filed a motion to stay in the State Court Action which is set for hearing on September 6, 2005.  In the interim, Patriot asks this Court to enter a preliminary injunction barring the Dixons from litigating and/or engaging in discovery in the State Court Action pending final resolution of the Petition to Compel Arbitration in federal court.  In support of its Motion, Patriot asserts that there is a substantial likelihood of success on the merits given the federal policy favoring arbitration, that there is a substantial threat of irreparable injury if the injunction is denied because Patriot may effectively waive its arbitration rights by participating in state court discovery, that the threatened injury to Patriot outweighs the harm of an injunction to the Dixons, and that the public's interest would be promoted via such an injunction.

II.     **Analysis.**

A.     ***Rule 65 Standard.***

To be eligible for preliminary injunctive relief under Rule 65, Fed.R.Civ.P., a plaintiff must make a showing of each of the following elements: "(1) substantial likelihood of success on the merits; (2) irreparable injury will be suffered unless the injunction issues; (3) the threatened injury to the movant outweighs whatever damage the proposed injunction may cause the opposing party; and (4) if issued,

the injunction would not be adverse to the public interest." *McDonald's Corp. v. Robertson*, 147 F.3d 1301, 1306 (11th Cir. 1998); *see also Burk v. Augusta-Richmond County*, 365 F.3d 1247, 1263 (11th Cir. 2004). "A preliminary injunction is an extraordinary and drastic remedy not to be granted unless the movant clearly establishes the 'burden of persuasion' as to each of the four prerequisites." *Four Seasons Hotels And Resorts, B.V. v. Consorcio Barr, S.A.*, 320 F.3d 1205, 1210 (11th Cir. 2003).

In their Response to the Motion for Preliminary Injunction (doc. 11), the Dixons eschew traditional Rule 65 analysis in favor of two arguments. First, the Dixons maintain that the Circuit Court of Clarke County "has jurisdiction over all parties and all issues" in the underlying State Court Action, such that Patriot "lacks any basis to file any additional pleadings" in federal court. (Response, at 1.) Although this argument is inartfully expressed, the Court construes it as a request that the Court engage in *Colorado River* abstention here.[5] Second, the Dixons contend that federal subject matter jurisdiction is lacking because there is no diversity of citizenship once the State Court Action defendants' citizenship is taken into consideration.[6]

###  B.    Subject Matter Jurisdiction Issue.

As a threshold matter, defendants argue that the Motion for Preliminary Injunction should be denied because federal jurisdiction is lacking.

---

[5]    The spatial and thematic primacy afforded the abstention argument in the Response is curious given the Dixons' contemporaneously filed motion urging the Court to decide the subject matter jurisdiction issue first. Yet the jurisdiction issue appears as little more than an afterthought in the Response, clearly subservient to the abstention point. The Court need not reconcile these mixed signals because the subject matter jurisdiction issue will be considered at the outset of its evaluation of the Motion for Preliminary Injunction.

[6]    The Dixons' short Response purports to "adopt any and all previous pleadings and briefs that have already been filed in response to [Patriot]'s pleadings heretofore filed in federal court." (Response, at 2.) Such a sweeping statement would have the Court sift through dozens of pages of briefing to hazard a guess as to which arguments the Dixons would rely on here. The Dixons' approach also contravenes instructions given in an Order (doc. 10) dated July 22, 2005, directing the Dixons "to incorporate any relevant arguments from their earlier Memorandum *by reference to category of argument and appropriate page numbers from same.*" (*Id.* (emphasis added).) The Dixons disregard this directive at their peril.

       1.        *Diversity Jurisdiction is Present.*

Like any action filed in federal court, a complaint seeking to compel arbitration pursuant to the Federal Arbitration Act, 9 U.S.C. §§ 1 *et seq.* ("FAA"), is not cognizable in the absence of federal subject matter jurisdiction.  By its terms, the FAA allows a petition to enforce an arbitration agreement to proceed in federal court only when, "save for such agreement, [the federal court] would have jurisdiction under Title 28, in a civil action or in admiralty of the subject matter of a suit arising out of the controversy between the parties."  9 U.S.C. § 4.  As early as 1978, the old Fifth Circuit recognized the requirement that "petitions to compel arbitration, brought pursuant to Section 4 of the Arbitration Act, 9 U.S.C. § 4, allege an independent ground of jurisdiction."  *Commercial Metals Co. v. Balfour, Guthrie & Co.*, 577 F.2d 264, 268 (5th Cir. 1978).  The Supreme Court has likewise held that "Section 4 provides for an order compelling arbitration only when the federal district court would have jurisdiction over a suit on the underlying dispute; hence, there must be diversity of citizenship or some other independent basis for federal jurisdiction before the order can issue."  *Moses H. Cone Memorial Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 25 n.32, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983).  The Eleventh Circuit has consistently adhered to this bedrock jurisdictional principle.  *E.g., Household Bank v. JFS Group*, 320 F.3d 1249, 1253 (11th Cir. 2003); *Boyd v. Homes of Legend, Inc.*, 188 F.3d 1294, 1298 n.8 (11th Cir. 1999); *Tamiami Partners, Ltd. v. Miccosukee Tribe*, 177 F.3d 1212, 1222 (11th Cir. 1999); *MS Dealer Service Corp. v. Franklin*, 177 F.3d 942, 945 (11th Cir. 1999); *First Franklin Financial Corp. v. McCollum*, 144 F.3d 1362, 1363 (11th Cir. 1998); *Baltin v. Alaron Trading Corp.*, 128 F.3d 1466, 1469 (11th Cir. 1997).

Recognizing the need for an independent basis of jurisdiction, Patriot invokes diversity jurisdiction pursuant to 28 U.S.C. § 1332, which provides subject matter jurisdiction "where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between ... citizens of different states."  *Id.*  On its face, the Petition to Compel Arbitration alleges complete diversity of citizenship as between Patriot (an Indiana citizen) and the Dixons (Alabama citizens), and asserts that the "amount in controversy exceed[s] the sum of $75,000, exclusive of interest and costs." (Petition, ¶ 3.)  The Dixons do not dispute these jurisdictional facts; as such, it is plain that subject

matter jurisdiction lies pursuant to § 1332.  *See Franklin*, 177 F.3d at 945 (where petition to compel arbitration alleged, and defendant did not dispute, that petitioner and respondent were of diverse citizenship and amount in controversy exceeded $75,000, "[t]hat plainly satisfies 28 U.S.C. § 1332's demands") (citation omitted).

Despite the complete diversity between the parties named in the Petition, the Dixons insist that diversity jurisdiction is lacking because Cedar Ridge (which is not a named party in this action) is a party in the State Court Action and is nondiverse as to the Dixons.  Whether diversity of citizenship exists or not in the State Court Action, and whether that action would be removable, are of no consequence to the presence or absence of subject matter jurisdiction here.  *See McCollum*, 144 F.3d at 1363 ("As a matter of both § 1332's language and common sense, whether another action is removable or not does not affect jurisdiction in this, an independent action" to compel arbitration); *Franklin*, 177 F.3d at 945 (declining to modify or reverse *McCollum* on this point).  There can be no doubt that the face of the Complaint properly invokes federal jurisdiction on the basis of diversity of citizenship.

### 2.    Application of Rule 19 to Cedar Ridge.

Alternatively, the Dixons contend that this action should be dismissed pursuant to Rule 19, Fed.R.Civ.P., because of an indispensable party whose presence would destroy diversity jurisdiction.[7] In particular, the Dixons point to Cedar Ridge, whom they identify as an Alabama citizen and therefore non-diverse from the Dixons.  Cedar Ridge is not a party here.  Nonetheless, the Dixons maintain that Cedar Ridge is indispensable to Patriot's Petition because Cedar Ridge was a signatory to the Arbitration Agreement.  Because Cedar Ridge must be joined but such joinder would destroy diversity jurisdiction, the Dixons argue, dismissal of this action is required.  *See Doctor's Associates, Inc. v. Distajo*, 66 F.3d 438, 445 (2ⁿᵈ Cir. 1995) ("Where joinder of a party would destroy subject matter

---

[7]    This argument should have been presented not as an objection to the Petition or in an opposition brief to the Motion for Preliminary Injunction, but rather as a Motion to Dismiss pursuant to Rule 12(b)(7), Fed.R.Civ.P.  Because the issue has been briefed by both sides and because Patriot has not challenged the manner in which the Dixons raised their objection, the Court will consider this Rule 12(b)(7) argument, notwithstanding the Dixons' failure to present it in a procedurally proper manner.

jurisdiction, the court must dismiss the action if that party is indispensable to the litigation.") (citations omitted).

In evaluating a claim that a federal action must be dismissed because of an absent indispensable party, the Eleventh Circuit has devised the following test:

> "First, the court must ascertain under the standards of Rule 19(a) whether the person in question is one who should be joined if feasible. If the person should be joined but cannot be (because, for example, joinder would divest the court of jurisdiction) then the court must inquire whether, applying the factors enumerated in Rule 19(b), the litigation may continue."

*Focus on the Family v. Pinellas Suncoast Transit Authority*, 344 F.3d 1263, 1280 (11th Cir. 2003) (citations omitted). Stated differently, the first prong of the test is whether the missing party is "necessary" pursuant to the factors set forth in Rule 19(a). If so and if that party cannot be joined, the analysis moves to the second part, namely, whether that party is also "indispensable" pursuant to the factors set forth in Rule 19(b). *See National Union Fire Ins. Co. v. Rite Aid of South Carolina, Inc.*, 210 F.3d 246, 249 (4th Cir. 2000). Only if the missing party who cannot be joined is both "necessary" and "indispensable" under the Rule 19 analysis is dismissal proper. In light of these authorities, the Court will analyze the Dixons' Rule 19 argument by, first, determining whether Cedar Ridge is a party that "should be joined" and, second, if so, determining whether the litigation may continue in its absence.

a.      Rule 19(a) Analysis.

In assessing whether a particular person "should be joined," Rule 19(a) counsels that a party is "necessary" only under the following circumstances: (i) "in the person's absence complete relief cannot be accorded among those already parties," (ii) disposition of the case in the person's absence may "as a practical matter impair or impede the person's ability to protect" his interest, and (iii) such disposition may "leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations." *Id.*[8]

---

[8]      A missing party's status as a joint tortfeasor does not automatically render it a necessary party. *See Temple v. Synthes Corp.*, 498 U.S. 5, 7, 111 S.Ct. 315, 112 L.Ed.2d 263 (1990) ("It has long been the rule that it is not necessary for all joint tortfeasors to be named as

The Dixons assert that the Rule 19(a) test is satisfied in two respects.  First, they contend, Cedar Ridge's status as a signatory to the Arbitration Agreement means that "full relief cannot be accorded to the Dixons in its absence."  (Defendants' Brief (doc. 8), at 7.)  The Dixons elaborate that their claims against Patriot and Cedar Ridge "are so intertwined that they are not severable," and that "the Arbitration Agreement covers all of the Dixons' claims against both Patriot and Cedar Ridge."  (*Id.* at 8.)  But the Dixons have not explained, and the record does not establish, why full relief could not be granted to them without Cedar Ridge's presence.  The Dixons seek no relief in this federal action.  Indeed, the sole issue joined here is whether the Dixons must arbitrate their claims against Patriot.  Regardless of how that narrow question is decided, the Dixons will in no way be precluded or prevented from pursuing full relief against Cedar Ridge in the State Court Action, where the Dixons have sued Cedar Ridge on two dozen theories of liability.  *See Franklin*, 177 F.3d at 946 (confirming that missing party is not rendered indispensable simply because state court plaintiff has couched defendant and missing party as coconspirators and joint tortfeasors).  The Court therefore rejects the Dixons' contention that they cannot receive full relief unless Cedar Ridge is a party in this case.

Second, the Dixons argue that Rule 19(a) is satisfied because of the "potential for inconsistent judgments," inasmuch as "the issue as to whether the Arbitration Agreement is valid and enforceable is central to both the state and the federal court proceedings," yielding a "high likelihood of incongruous results."  (Defendants' Brief, at 9.)  There may be sound reasons for a single court to adjudicate a case where there is a risk that one court might compel arbitration and another court might deem an arbitration agreement invalid or unenforceable, thereby creating a factual and legal "whipsaw."  *See Owens-Illinois, Inc. v. Meade*, 186 F.3d 435, 441 (4th Cir. 1999); *see also PaineWebber, Inc. v. Cohen*, 276 F.3d 197, 201 (6th Cir. 2001) (deeming missing defendant a necessary party because state court plaintiff would be faced with inconsistent procedural remedies if the federal and state courts

---

defendants in a single lawsuit ....  The Advisory Committee Notes to Rule 19(a) explicitly state that a tortfeasor with the usual 'joint-and-several' liability is merely a permissive party to an action against another with like liability.") (citations omitted); *United Benefit Life Ins. Co. v. Collins*, 2001 WL 273902, *2 (N.D. Ala. Jan. 2, 2001) ("It is a general rule that the mere fact that parties are joint tortfeasors or co-defendants does not render them indispensable.").

reached different conclusions regarding whether arbitration clauses apply).  But the Dixons have failed to make any showing that such a risk exists here, and *Meade* is therefore inapposite.  Indeed, they do not suggest that they have requested injunctive or declaratory relief from the state court as to the enforceability of the Arbitration Agreement, that Cedar Ridge has petitioned the state court to refer their claims to arbitration, or that Cedar Ridge has even raised arbitration as an affirmative defense.[9]  Of course, Cedar Ridge, like any party to an arbitration agreement, may waive its right to enforce such agreement.  *See Ivax Corp. v. B. Braun of America, Inc.*, 286 F.3d 1309, 1315 (11th Cir. 2002) ("an agreement to arbitrate, just like any other contract, may be waived"); *Hales v. ProEquities, Inc.*, 885 So.2d 100, 105 (Ala. 2003) (declaring it well settled under Alabama law that a party may waive its right to arbitrate).  On the record before it, the Court has no basis for concluding that the state court will have occasion to decide the validity or enforceability of the Arbitration Agreement as between the Dixons and Cedar Ridge; therefore, Cedar Ridge cannot be deemed a necessary party here.  *See Legacy Wireless Services, Inc. v. Human Capital, L.L.C.*, 314 F. Supp.2d 1045, 1052 (D. Or. 2004) (missing signatory to arbitration agreement deemed not a necessary party because there is no risk of another court applying arbitration clause in manner inconsistent with federal court ruling, inasmuch as whether federal court plaintiff is subject to arbitration clause is not an issue pending in another court).[10]

In any event, courts have been unsympathetic to a state court plaintiff's objections that it is prejudiced by having to litigate in multiple fora where, as here, the possibility of having to proceed simultaneously in both state and federal court is a direct result of the Dixons' decision to sue Patriot and Cedar Ridge in state court, rather than to demand arbitration under the Arbitration Agreement.  *See*

---

[9]        In that regard, the Dixons have presented neither evidence nor argument to rebut Patriot's counsel's representation that "the validity and applicability of arbitration ... is not an issue presently in the state court proceeding."  (Plaintiff's Brief (doc. 14), at 8-9.)

[10]        At most, the evidence is that Patriot (not Cedar Ridge) has filed a motion to stay the State Court Action pending resolution of the arbitration issue in these proceedings.  But there is no evidence and no suggestion that any party has asked the state court to rule on the enforceability and validity of the Arbitration Agreement.

*Cohen*, 276 F.3d at 202-03; *Blimpie Int'l, Inc. v. Butterworth*, 2005 WL 756218, *4 (S.D. Ind. Mar. 9, 2005) (rejecting prejudice argument arising from parallel proceedings as to enforceability of arbitration agreement where "any risk of parallel proceedings is attributable to [state court plaintiff]'s state court complaint").  Finally, the unavoidable fact of the matter is that the Court can enter an order compelling the Dixons to arbitrate their claims against Patriot, which is all the relief sought herein, without the presence of Cedar Ridge.  As such, Cedar Ridge cannot reasonably be deemed a necessary party here.  *See generally Doctor's Assocs.*, 66 F.3d at 446 (holding, in resolving petition to compel arbitration, that absent party was not "necessary" under Rule 19(a) because the district court could "grant all the relief sought" by petitioner--"an order compelling arbitration"); *Legacy*, 314 F. Supp.2d at 1051 (declaring that missing signatory to arbitration agreement was not necessary party because sole issue before court was whether dispute must be arbitrated and adding missing signatory would change neither the issue nor how it will ultimately be resolved); *Private Business, Inc. v. Alabama Exterior Supply, Inc.*, 2000 WL 33156437, *5 (S.D. Ala. Dec. 19, 2000) (reasoning that Rule 19(a) threshold was not met because relief sought by federal court plaintiff, namely enforcement of arbitration agreement as to that entity, "is not affected by the fact that the other state court defendants are not joined").

For the foregoing reasons, the Court concludes that the Dixons have failed to establish that Cedar Ridge is a necessary party, for purposes of Rule 19(a).

        *b.*     *Rule 19(b) Analysis.*

Even if Cedar Ridge were deemed a necessary party pursuant to Rule 19(a), its non-diverse status would not implicate jurisdictional concerns unless Cedar Ridge were also found to be an indispensable party pursuant to the factors enumerated in Rule 19(b).  Those factors include the following: (a) whether a judgment rendered in Cedar Ridge's absence might be prejudicial to existing parties; (b) whether such prejudice could be lessened or avoided by protective provisions in the judgment, the shaping of relief, or other measures; (c) whether judgment rendered in Cedar Ridge's absence will be adequate; and (d) whether Patriot will have an adequate remedy if the federal action is dismissed for nonjoinder.  Rule 19(b), Fed.R.Civ.P.; *see also Laker Airways, Inc. v. British Airways,*

*PLC*, 182 F.3d 843, 848 (11ᵗʰ Cir. 1999) (setting forth Rule 19(b) balancing test).  Despite the precise

guidance of Rule 19(b), the Court must bear in mind that "[a] Rule 19(b) analysis is not mechanical;

rather it is conducted in light of the equities of the case at bar."  *National Union*, 210 F.3d at 252

(citation omitted).

      The parties' briefs have not directly addressed the Rule 19(b) factors; nonetheless, the Dixons'

position is evidently that they would be prejudiced if a judgment were rendered in Cedar Ridge's

absence and that any such judgment would be inadequate.  The Court disagrees.  Irrespective of

whether the Dixons' claims against Patriot are ordered to arbitration, which is the sole relief sought

herein, the Dixons will be able to proceed with their claims against Cedar Ridge in the State Court

Action.  Based on the record before it, the Court cannot find that Cedar Ridge's absence in this lawsuit

will work any harm on the Dixons, much less preclude entry of an adequate judgment as to Patriot's

Petition to Compel Arbitration.  To the extent that the Dixons contend that they will incur prejudice in

the form of a risk of inconsistent or incongruous results in this action and in the State Court Action, such

a concern is unwarranted and unavailing for the reasons set forth *supra*.  There is simply no indication

that the Dixons face any real risk of the "whipsawing" phenomenon that so exercised the *Meade* court.

      Even if there were some likelihood of inconsistent interpretations of the Arbitration Agreement

at the federal and state court levels, the Court agrees with the Sixth Circuit's reasoning that the Dixons'

"fear that the federal and state courts will reach conflicting interpretations of the arbitration clauses does

not present the degree of prejudice necessary to support a conclusion that [Cedar Ridge] is an

indispensable party."  *Cohen*, 276 F.3d at 203; *see also Snap-On Tools Corp. v. Mason*, 18 F.3d

1261, 1266-67 (5ᵗʰ Cir. 1994) (rejecting state court plaintiff's argument that state court defendant who

was missing from federal lawsuit was indispensable, even though arbitrability issue was common to all

potential defendants); *Blimpie*, 2005 WL 756218, at *4-5 (any prejudice to state court plaintiffs arising

from having to litigate claims against nondiverse defendant in state court while simultaneously arbitrating

claims against diverse defendant is minimal, and does not support conclusion that judgment is

inadequate or that nondiverse defendant is indispensable party).[11]

In conducting the Rule 19 inquiry, the Eleventh Circuit has emphasized that "pragmatic concerns, especially the effect on the parties and the litigation, control." *Focus on the Family*, 344 F.3d at 1280 (citation omitted); *see also In re Torcise*, 116 F.3d 860, 865 (11th Cir. 1997) (similar); *Bio-Analytical Services, Inc. v. Edgewater Hospital, Inc.*, 565 F.2d 450, 452 (7th Cir. 1977) ("Rule 19 entails a pragmatic approach, focusing on realistic analysis of the facts of each case."). "[A] court does not know whether a particular person is 'indispensable' until it has examined the situation to determine whether it can proceed without him." *Torcise*, 116 F.3d at 866. Having performed the case-specific, pragmatic inquiry directed by the Eleventh Circuit, the Court is of the opinion that Cedar Ridge is not necessary to this litigation and, even if it were, Cedar Ridge is not indispensable, inasmuch this litigation may properly continue without it.[12] For that reason, the Dixons' objections to this action

---

[11]    As *Cohen* so aptly put it, "the multiple proceedings and inconsistent results in state and federal court that [state court plaintiff] seeks to avoid can occur whenever joint tortfeasors are not parties to the same lawsuit.  This form of prejudice, however, does not require a finding that joint tortfeasors are necessary or indispensable parties. ... For the same reason, the potential prejudice that [state court plaintiff] fears does not provide a basis for concluding that [missing defendant] is an indispensable party." *Cohen*, 276 F.3d at 204.  The *Cohen* court correctly distinguished *Meade* on the ground that the absent, non-diverse parties in *Meade* were state court <u>plaintiffs</u>, not state court <u>defendants</u>, unlike in *Cohen* and the case at bar.  According to *Cohen*, the *Meade* court's "whipsawing" concerns derived from the fact that nondiverse state court plaintiffs were not included in the federal action, giving rise to potential inconsistencies as between the claims of diverse state court plaintiffs (who were subject to the federal judgment) and nondiverse state court plaintiffs (who were not).  By contrast, in both *Cohen* and this case, the only reason why the state court plaintiff might face inconsistent judgments is that it seeks to hold two parties to an arbitration agreement jointly and severally liable.  "As explained previously, Rule 19 was not designed to eliminate this possibility." *Id.* at 205.  The Court finds *Cohen* persuasive, and deems *Meade* distinguishable for the reasons expressed by the *Cohen* court. *See also Private Business*, 2000 WL 33156437, at *4 (distinguishing *Meade* because omitted parties in *Meade* were plaintiffs in state action while omitted parties in case at bar were state court defendants, a distinction deemed significant because state court plaintiffs in *Private Business* could incur no prejudice through missing party).

[12]    *See generally Franklin*, 177 F.3d at 946 (where both diverse and nondiverse state court defendants were arguably covered by arbitration agreement, district court properly determined that nondiverse state court defendant was not an indispensable party and that it could properly exercise subject matter jurisdiction over diverse state court defendant's petition to compel arbitration).

-12-

predicated on subject matter jurisdiction and Rule 19 considerations are **overruled**.

     *C.*     ***Abstention Issue.***

     The Dixons' next line of attack is that, even if jurisdiction is proper, the Court should abstain from considering this matter because of the currently pending State Court Action.  In making this argument, the Dixons invoke the *Colorado River* doctrine of judicial economy.  This doctrine authorizes a federal district court to dismiss or stay an action where there is an ongoing parallel action in state court, but only under "exceptional circumstances."  *Moorer v. Demopolis Waterworks and Sewer Bd.*, 374 F.3d 994, 997 (11th Cir. 2004); *see also Ambrosia Coal and Const. Co. v. Pages Morales*, 368 F.3d 1320, 1328 (11th Cir. 2004) ("federal courts can abstain to avoid duplicative litigation with state courts only in 'exceptional' circumstances").  Indeed, the Supreme Court has framed this doctrine as an "extraordinary and narrow exception to the duty of a District Court to adjudicate a controversy properly before it."  *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 813, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976).  In applying *Colorado River*, the Court is mindful of the admonition that "[o]nly the clearest of justifications will warrant dismissal of the federal action" under that doctrine.  *Ambrosia Coal*, 368 F.3d at 1329 (citation omitted).

     The Eleventh Circuit has identified six factors that district courts must consider in assessing whether *Colorado River* abstention is proper, to-wit: (i) whether any court has assumed jurisdiction over property, (ii) whether the federal forum is inconvenient, (iii) the potential for piecemeal litigation, (iv) the temporal order in which each forum obtained jurisdiction, (v) whether state or federal law governs, and (vi) whether the state court is adequate to protect the parties' rights.  *See Ambrosia Coal*, 368 F.3d at 1331; *McCollum*, 144 F.3d at 1364-65 (citing *Moses H. Cone*, 460 U.S. at 19-27).[13]  This Court "must weigh these factors with a heavy bias in favor of exercising jurisdiction."

---

     [13]     In outlining the multifactor abstention test, both parties ignore Eleventh Circuit precedent on the *Colorado River* doctrine in favor of a Sixth Circuit decision from 1998 that identified a total of eight factors, including the relative progress of the state and federal proceedings, and the presence or absence of concurrent jurisdiction.  (Defendants' Brief, at 10-11; Plaintiff's Brief, at 11.)  Absent any indication that these last two factors have been embraced by the Eleventh Circuit's formulation of the *Colorado River* test, the Court will not consider them separately here.  In any event, these two considerations are effectively subsumed in the existing six factors identified by the Eleventh

*TranSouth Financial Corp. v. Bell*, 149 F.3d 1292, 1295 (11th Cir. 1998).  In applying them, the Court is cognizant that no one factor is necessarily dispositive, and that "the factors must be considered flexibly and pragmatically, not as a mechanical checklist."  *Ambrosia Coal*, 368 F.3d at 1332.  The Court will address each of these factors sequentially.

> ### 1.   Assumption of Jurisdiction over Property.

The Dixons contend that this factor militates in favor of abstention because their mobile home "is at issue, and the state court has already assumed jurisdiction over it."  (Defendants' Brief, at 11.)  This argument misapplies *Colorado River*.  As the case law makes clear, this factor only applies when one court or the other is asserting *in rem* jurisdiction over property.  *See Ambrosia Coal*, 368 F.3d at 1332 ("Because the relevant cases are not proceedings *in rem*, neither court has jurisdiction over property, and the first *Colorado River* factor does not favor abstention.").[14]  In the absence of an evidence that the state court has assumed *in rem* jurisdiction over the mobile home or any other property, this factor does not support abstention.

> ### 2.   Relative Convenience of Fora.

The Dixons argue that the Circuit Court of Clarke County is a more convenient forum to the parties because "[u]nlike the federal district court, the state court is familiar with the underlying proceeding and has the authority to dispose of all issues involved in the case."  (Defendants' Brief, at 11.)  Again, the Dixons misconstrue *Colorado River*, this time by incorrectly importing concepts relating to other factors into the "relative convenience" analysis.  The Eleventh Circuit has made clear that courts considering this factor "should focus primarily on the physical proximity of the federal forum to the evidence and the witnesses."  *Ambrosia Coal*, 368 F.3d at 1332; *Romine v. Compuserve*

---

Circuit, and breaking them out as distinct factors would affect neither the substance nor the outcome of the Court's analysis.

    [14]    The defendants cite *Romine v. Compuserve Corp.*, 160 F.3d 337 (6th Cir. 1998), in support of their position that this factor supports abstention.  But the *Romine* decision explains that this factor is "whether the state court has assumed jurisdiction over any *res* or property."  *Id.* at 341.  The Circuit Court of Clarke County unquestionably has not exercised *in rem* jurisdiction over the mobile home; therefore, this factor weighs against abstention.

*Corp.*, 160 F.3d 337, 341 (6ᵗʰ Cir. 1998) (second factor counsels against abstention where both federal and state courthouses are located in the same city).  There is no dispute that the Dixons live in Mobile County, Alabama, which is precisely where this District Court sits.  If anything, this forum is more convenient for the Dixons than that in the State Court Action, which requires them to trek to Clarke County.  Besides, a party cannot reasonably be heard to complain that a forum is inconvenient when that forum is the very division of the very federal district where that party lives.  This factor cuts against abstention.

### 3.   *Potential for Piecemeal Litigation.*

The Eleventh Circuit has taken a dim view of efforts to secure *Colorado River* abstention in the arbitration context based on the potential for piecemeal litigation.  *See McCollum*, 144 F.3d at 1364 (explaining that federal proceeding to compel arbitration does not give rise to piecemeal litigation of merits, and that if arbitration is granted, "that is piecemeal litigation that the parties and federal policy have together made mandatory"); *see also Moses H. Cone*, 460 U.S. at 20-21 (opining that litigation of arbitrability issue in federal rather than state court does not cause piecemeal resolution of underlying dispute, and in any event the arbitrability issue is easily severable from the merits); *Snap-On Tools*, 18 F.3d at 1265 ("even if some piecemeal litigation does result, that sometimes is the inevitable result of a congressional policy strongly favoring arbitration"); *Blimpie*, 2005 WL 756218, at *7 ("piecemeal litigation may be the inevitable result of a federal policy favoring arbitration, and is not the result of a choice between a federal and state forum").[15]

The Dixons nonetheless urge the Court to find *McCollum* distinguishable because the Arbitration Agreement in this case "purports to apply to all of the claims in the underlying state action," rendering "piecemeal litigation of the dispute ... completely unnecessary."  (Defendants' Brief, at 12 n.3.)  Given the posture of this dispute, however, piecemeal litigation is plainly necessary to effectuate

---

[15]     As the Seventh Circuit recently explained in a slightly different context, "[i]f there is to be a duplicative proceeding exception, it is for Congress to add it to the FAA; it is not for us to create because one party may have put itself in a bad position."  *Reliance Ins. Co. v. Raybestos Products Co.*, 382 F.3d 676, 680 (7ᵗʰ Cir. 2004).  Furthermore, given the rarity of *Colorado River* abstention, "[a]spects of the same case often proceed simultaneously in state and in federal court."  *Id.* at 679.

the federal policy favoring arbitration, irrespective of whether the relevant arbitration agreement covers all or merely some of the claims pending in the state court litigation. The Dixons would have this Court abdicate the arbitration determination to a state court, despite federal jurisdiction over same, simply because a nondiverse state court defendant might also seek arbitration.  Such an approach might consolidate decisionmaking over the arbitration question in a single forum, but it would disserve the federal policy favoring arbitration by cutting federal courts out of the loop.  As one appellate court has explained in circumstances substantially similar to those here, "the desire to avoid litigating a single issue in multiple forums is insufficient to overcome the strong federal policy supporting arbitration."  *Cohen*, 276 F.3d at 207; *Ambrosia Coal*, 368 F.3d at 1333 (piecemeal litigation factor favors abstention only where such piecemeal litigation would be "abnormally excessive or deleterious," and mere fact that state and federal cases will both have to deal with validity of agreement is insufficient).  Contrary to the Dixons' position, there are no "unique circumstances" in this case warranting a departure from the sound principles articulated in *McCollum* as to the "piecemeal litigation" factor.  Thus, that factor does not favor abstention.

### 4.    Order in which Each Forum Obtained Jurisdiction.

Patriot filed its Petition to Compel Arbitration in federal court on June 2, 2005, some five weeks after the Dixons initiated the State Court Action on April 26, 2005.  The record does not reflect when Patriot was served with process in the State Court Action; however, Patriot represents that it was served on May 2, 2005, exactly one month before it filed its lawsuit here.  Patriot further represents that it had no prior indication that the Dixons would refuse to honor the Arbitration Agreement so as to allow it a reasonable opportunity to file its Petition.  (Plaintiff's Brief, at 12.)  Under similar circumstances, courts have held that the fact that a state court obtained jurisdiction several weeks before the federal court is insufficient to warrant abstention.  In *McCollum*, for instance, the Eleventh Circuit rejected a contention similar to the Dixons' where the state court action predated its federal counterpart by three weeks, reasoning that the petitioner could not have filed its action to compel arbitration much earlier than it did and that the record did not reflect prior knowledge by the petitioner that the respondent would not honor the arbitration agreement.  144 F.3d at 1365.

-16-

The critical insight here is that, contrary to the Dixons' position, this factor is not a mere mechanical assessment of the chronological order in which the two suits were initiated, but rather focuses on "the progress of the proceedings and whether the party availing itself of the federal forum should have acted earlier." *TranSouth*, 149 F.3d at 1295; *see also Central Reserve Life Ins. Co. v. Kiefer*, 211 F.R.D. 445, 449-50 (S.D. Ala. 2002) (timing and progress of concurrent suits weigh against abstention where federal plaintiff commences federal action at nearly the earliest opportunity after defendant refuses to arbitrate).  The Dixons having made no showing that the State Court Action has progressed materially[16] or that Patriot could or should have filed its Petition to Compel Arbitration sooner than it did, this factor does not weigh in favor of abstention.

> 5.      *Applicable Law.*

The applicable law factor unambiguously favors the exercise of federal jurisdiction.  "Here, federal law provides the rule of decision because the petition has been brought solely under the FAA." *Central Reserve*, 211 F.R.D. at 450; *see also McCollum*, 144 F.3d at 1365 ("The petition was brought pursuant to the Federal Arbitration Act, 9 U.S.C. § 3-4, and thus any legal interpretation will be of federal law."); *Snap-On Tools*, 18 F.3d at 1266 (in action to compel arbitration, federal law provides rule of decision on the merits, so this factor cuts against abstention).  Although the Dixons maintain that this factor is mitigated by the existence of concurrent federal and state jurisdiction and the existence of state law issues as to enforceability of the Arbitration Agreement, the fact remains that Patriot's petition implicates federal law.[17]  As the Supreme Court has opined, "the presence of federal-law issues must always be a major consideration weighing against" abstention.  *Moses H. Cone*, 460 U.S. at 23.  Plainly, the federal rule of decision in this case disfavors abstention.

---

[16]      In that regard, the Dixons' representation that the State Court Action has "reached the discovery stage" (Defendants' Brief, at 14) is not compelling on the issue of the relative timing and progress of the actions.

[17]      The existence of state law issues in tandem with federal law issues favors abstention only where the questions of state law are so complex that a state court would be best suited to resolve them.  *See Ambrosia Coal*, 368 F.3d at 1334 ("no aspect of this case appears to render the presence of state law, alongside federal claims, an arrow in the defendants' abstention quiver").  No such intricacies of state law are apparent here.

6.      *Adequacy of State Court to Protect Parties' Rights.*

Undoubtedly, Alabama courts can apply the FAA and enforce parties' rights to arbitration thereunder.  *See McCollum*, 144 F.3d at 1365 ("the Alabama Supreme Court has accepted that an Alabama court may compel arbitration under § 4, as long as the underlying transaction involves interstate commerce") (citing *Old Republic Ins. Co. v. Lanier*, 644 So.2d 1258, 1260 (Ala. 1994)). Given the availability of FAA relief at the state court level, there is no reason to believe that state court remedies are inadequate to protect Patriot's alleged right to have this matter submitted to arbitration. Therefore, this factor favors abstention.  *See Central Reserve*, 211 F.R.D. at 450 ("Adequacy of state court to protect rights is a factor slightly in favor of the Defendant."); *TranSouth*, 149 F.3d at 1295 (state court's ability to eventually grant complete relief weighs slightly in favor of abstention). Nonetheless, this factor by itself does not provide the requisite exceptional circumstances for *Colorado River* abstention.  *See Cohen*, 276 F.3d at 209; *McCollum*, 144 F.3d at 1365 (mere fact that petitioner may receive relief at some point from state court on arbitration issue does not provide the "clearest of justifications" necessary to warrant refusing to exercise jurisdiction).

7.      *Conclusion.*

Balancing these elements *in toto*, the Court cannot find the "extraordinary circumstance" or the "clearest of justifications" required to warrant abstention.  *McCollum*, 144 F.3d at 1365 (quoting *Moses H. Cone*, 460 U.S. at 26-27).  Indeed, *Moses H. Cone* teaches that where subject matter jurisdiction exists, federal courts have a "virtually unflagging obligation" to exercise it.  460 U.S. at 15. The court's task is not "to find some substantial reason for the exercise of federal jurisdiction by the district court; rather, the task is to ascertain whether there exist exceptional circumstances ... to justify the surrender of that jurisdiction."  *Id.* at 25-26.  This guidance in turn implies "that dismissal is warranted in light of a concurrent state court action only when a balancing of relevant factors, heavily weighted in favor of the exercise of jurisdiction, shows the case to be exceptional."  *McCollum*, 144 F.3d at 1364 (citations omitted).  The *Moses H. Cone* factors do not show this case to be exceptional; therefore, *Colorado River* abstention is unwarranted, and this Court will exercise its jurisdiction over the Petition.

D.      *Application of Rule 65 Framework.*

Having dispatched the Dixons' contentions that the Motion for Preliminary Injunction should not be heard because either federal subject matter jurisdiction is lacking or *Colorado River* abstention is warranted, the Court can finally turn to the merits of the Rule 65 Motion.  The Motion posits two different formulations of the relief sought: (a) "a temporary injunction of all claims against Patriot Manufacturing, Inc., Patriot Homes of Alabama, Inc., and Southridge Homes, in the [State Court Action] pending resolution of the Petition to Compel Arbitration"; and (b) "an order enjoining the [Dixons] from engaging in discovery in the [State Court Action] until the parties have had an opportunity to brief the issues in this matter and for this Court to issue a final order on arbitration." (Motion (doc. 9), at 1, 4.)

The Dixons object to the Motion on grounds that the Agreement is unenforceable because it allegedly fails to comply with the disclosure requirements of the Magnuson-Moss Act and because it allegedly is unconscionable.  (Defendants' Brief, at 15-28.)[18]  The Court cannot even reach these issues because a fundamental defect with Patriot's Motion categorically bars the preliminary injunctive relief it seeks.

Under any reasonable interpretation of the Motion for Preliminary Injunction, Patriot is asking this Court to stay the State Court Action until such time as a final ruling on the Petition to Compel Arbitration can be entered.  Such a request is foreclosed by the prohibitions of the Federal Anti-Injunction Act, 28 U.S.C. § 2283 (the "Act").  Pursuant to the Act, a federal court can enjoin a state court proceeding only in the following narrowly circumscribed circumstances: (1) where there is an express congressional authorization to enjoin state proceedings; (2) where an injunction is necessary to

---

[18]      As noted *supra*, despite being invited to do so, the Dixons have failed to tailor any of their arguments to the context of the Motion for Preliminary Injunction, or to address the Rule 65 criteria in any respect.  As a result, the Court is left to speculate as to how the Dixons' objections to the Petition (as set forth in their brief filed prior to submission of the Motion for Preliminary Injunction) might translate into a Rule 65 analysis.  Notwithstanding this oversight, the Court surmises that the Dixons' arguments are aimed primarily at the "substantial likelihood of success on the merits" element of the four-pronged Rule 65 inquiry.  *See, e.g., McDonald's Corp. v. Robertson*, 147 F.3d 1301, 1306 (11th Cir. 1998).

protect a judgment rendered by a federal court; or (3) where an injunction is necessary to aid the federal court's jurisdiction of the action. *See TranSouth*, 149 F.3d at 1296.[19]  "Those exceptions are to be narrowly construed." *Id.*  This statute is consistent with the widely-recognized proposition that "[w]hen there are concurrent jurisdiction state and federal proceedings arising out of the same transaction or occurrence, ordinarily neither forum should interfere with the other's exercise of jurisdiction." *Id.* at 1297.

In the arbitration context, however, federal courts granting petitions to compel arbitration have repeatedly deemed a stay of parallel state court proceedings necessary under the "aid of jurisdiction" exception.[20]  *See, e.g., CitiFinancial, Inc. v. Lipkin*, 143 F. Supp.2d 657, 663 (N.D. Miss. 2000) (stay of state court action "is required to protect or effectuate the court's judgment and order that the controversy between the parties be submitted to arbitration");  *We Care Hair Development, Inc. v. Engen*, 180 F.3d 838, 844 (7th Cir. 1999) (district court did not abuse discretion in staying state court lawsuit because contrary ruling would have threatened validity of the district court's order compelling arbitration); *Reliance Nat'l Ins. Co. v. Seismic Risk Ins. Svcs., Inc.*, 962 F. Supp. 385, 390-91 (S.D.N.Y. 1997) (finding that stay issued in conjunction with order compelling arbitration falls within Act's exceptions and enjoining state court proceeding to protect jurisdiction and to bar irreparable injury); *Kellogg, Brown & Root, Inc. v. Bragg*, 250 F. Supp.2d 664, 669 (S.D. W.Va. 2003) (ordering parties to proceed to arbitration and staying pending state court action); *Central Reserve*, 211 F.R.D. at 451 (staying parallel state court proceeding under "aid of jurisdiction" exception to Act).

In its brief in support of the Motion for Preliminary Injunction, Patriot invokes the "aid of

---

[19]     These exceptions derive directly from the language of the Act, which provides as follows: "A court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments."  28 U.S.C. § 2283.

[20]     According to the Eleventh Circuit, the "aid of jurisdiction" exception applies only if the injunction is "necessary to prevent a state court from so interfering with a federal court's consideration or disposition of a case as to seriously impair the federal court's flexibility and authority to decide that case."  *TranSouth*, 149 F.3d at 1297 (quoting *Atlantic Coast Line R.R. v. Brotherhood of Locomotive Eng'rs*, 398 U.S. 281, 295, 90 S.Ct. 1739, 26 L.Ed.2d 234 (1970)).

jurisdiction" exception and relies on the Eleventh Circuit's *TranSouth* decision in support of same. (Plaintiff's Brief, at 15-16.)  Unfortunately for Patriot, *TranSouth*'s holding unequivocally slams the door on its ability to receive preliminary injunctive relief.  In particular, the *TranSouth* panel held as follows:

> "If the district court orders arbitration, a stay of the state court proceedings might be appropriate at that point because continued state court proceedings could jeopardize the federal court's ability to pass on the validity of the arbitration proceeding it has ordered.  However, we need not decide that question because ***the premised condition, an order compelling arbitration, does not exist now.  Therefore, the 'aid of jurisdiction' exception to the Anti-Injunction Act is inapplicable at present.***"

*TranSouth*, 149 F.3d at 1297-98 (emphasis added) (affirming district court's denial of stay of state court action pursuant to "aid of jurisdiction" exception); *see also Zurich American Ins. Co. v. Superior Court for State of California*, 326 F.3d 816, 826-27 (7th Cir. 2003) (district court erred in entering preliminary injunction enjoining concurrent state proceedings pending resolution of petition to compel arbitration, where such injunction did not satisfy "aid of jurisdiction" exception to Anti-Injunction Act without showing that state court was indifferent or hostile to FAA rights).

This is precisely the situation here.  Patriot is requesting a preliminary injunction whose purpose and effect could only be to stay the state court proceedings as between the Dixons and Patriot pending final resolution of the Petition to Compel Arbitration.  But *TranSouth* makes clear that the Anti-Injunction Act bars any such injunction unless and until an order compelling arbitration has been entered.  By seeking to stay the State Court Action antecedent to disposition of the Petition to Compel Arbitration, Patriot has placed cart before horse.  The Anti-Injunction Act clearly forbids this Court from staying state court proceedings based on a mere substantial likelihood that Patriot will succeed on the merits, which is the most the Court could find in ruling on the pending Motion.  Patriot having failed to come forward with any authority construing the Anti-Injunction Act as authorizing a stay of a state court action prior to final disposition of a petition to compel arbitration, and *TranSouth* being squarely prohibitive of any such stay, the Court cannot grant the relief sought in the Motion for Preliminary Injunction, irrespective of how the Rule 65 considerations play out.  Because the requested injunction

would plainly violate the Anti-Injunction Act, the Motion for Preliminary Injunction must be **denied**.

## III. Conclusion.

For all of the foregoing reasons, the Court **overrules** the Dixons' objections to this action on grounds of lack of subject matter jurisdiction, failure to join an indispensable party, and *Colorado River* abstention. The Dixons' Motion to Continue (doc. 12) is **moot**. Patriot's Motion for Preliminary Injunction (doc. 9) is **denied** pursuant to the Anti-Injunction Act. That said, the Court perceives no reason why the Petition to Compel Arbitration cannot be finally resolved at this time.[21] The parties have extensively addressed the merits of the Petition already in connection with briefing the Motion for Preliminary Injunction, and there do not appear to be any factual disputes requiring discovery, evidentiary hearing or trial. Nonetheless, in an effort to ensure that the parties have had ample opportunity to present all arguments and authorities they deem appropriate regarding the merits of the Petition to Compel Arbitration, it is **ordered** that the parties may submit supplemental briefs, supported by legal authority and exhibits as appropriate, on or before **September 19, 2005**. These supplemental briefs should not be redundant of previous filings, but must be confined to newly raised issues and arguments. In light of the considerable briefs already submitted, no further responses or replies are authorized. The Dixons are also **ordered** to file a Rule 12 responsive pleading on or before **September 13, 2005**.

If the Court determines that oral argument is necessary, the parties will be notified and a hearing will be scheduled. Otherwise, the Petition to Compel Arbitration will be taken under submission after September 19, 2005.

DONE and ORDERED this 1st day of September, 2005.

s/ WILLIAM H. STEELE
UNITED STATES DISTRICT JUDGE

---

[21] In that regard, the Court seeks to give effect to Congress's clear intent in the FAA "to move the parties to an arbitrable dispute out of court and into arbitration as quickly and easily as possible." *Moses H. Cone*, 460 U.S. at 22; *see also McCollum*, 144 F.3d at 1365 (noting the "federal policy embodied in the FAA in favor of swift enforcement of arbitration agreements").