IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| PATRIOT MANUFACTURING, INC., | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION 05-0321-WS-M |
| | ) | |
| MICHAEL and KALIE DIXON, | ) | |
| | ) | |
| Respondents. | ) | |

## ORDER

This matter is before the Court on petitioner Patriot Manufacturing, Inc.'s Motion for Leave to Amend and/or Supplement Petition to Compel Arbitration and to Re-Open File (doc. 34). The Motion has been briefed and is ripe for disposition.[1]

**I.    Background.**

Back in June 2005, plaintiff Patriot Manufacturing, Inc. filed a Petition to Compel Arbitration (doc. 2) against defendants Michael and Kalie Dixon. After extensive briefing, the Court entered an Order (doc. 31) on November 7, 2005 granting the Petition. That Order stated, in relevant part: "The Dixons and Patriot are hereby **ordered** to proceed to arbitration in accordance with the terms of the Arbitration Agreement." (Order, at 22.) Inasmuch as the sole purpose of Patriot's lawsuit had been to compel arbitration, with no other embedded claims for relief and no request by any party for the Court to direct, oversee or participate in the arbitration process, the November 9 Order directed that this file be closed, and it was.

The court file lay dormant until October 3, 2006, when the parties filed a Stipulation as to Arbitration (doc. 32), asking the Court to enter an order approving the parties' selection of an arbitrator and directing them to proceed in their stipulated manner in the arbitration with respect to discovery and other matters. The Stipulation concluded with the parties' "request that the Court enter an order requiring arbitration pursuant to the terms of this agreement." (Doc. 32, at

---

[1]    Under the E-Government Act of 2002, this is a written opinion and therefore is available electronically. However, it has been entered only to decide the motion or matter addressed herein and is not intended for official publication or to serve as precedent.

2.)  Via Order (doc. 33) dated October 4, 2006, the Court declined to do so, based on the following reasoning: (i) the Court had already ordered the parties to proceed to arbitration in November 2005; (ii) this file was closed at that time, such that there was no longer any pending case or controversy before this Court; (iii) no party had asked the Court to retain jurisdiction over the matter while arbitration proceedings were carried out, and nothing in the November 7, 2005 Order purported to retain jurisdiction over the manner in which the parties conducted their arbitration; and (iv) the parties had offered no basis for why this Court should enter orders micromanaging the minutiae of the arbitral process in this closed action.

Five months after this Court rejected the parties' attempt to have it endorse their Stipulation for how the arbitral process should unfold procedurally, this action resurfaces through Patriot's Motion for Leave to Amend, which was filed on February 16, 2007.  As the Court understands it, arbitration proceedings are underway and ongoing as between Patriot and respondents, Kalie and Michael Dixon.  Evidently, in December 2006, the Dixons submitted a "Class Arbitration Demand" to the parties' agreed-upon arbitrator.  When the arbitrator requested briefing on that issue, Patriot balked that the class arbitration demand was improper and asserted that this Court, rather than the arbitrator, should make that determination. On that basis, Patriot seeks leave to amend its pleadings to join various new issues in this case, including whether the Dixons' class arbitration demand is (a) within the scope of arbitration agreements entered by putative class members, (b) consistent with the Stipulation executed by Patriot and the Dixons in September 2006, (c) properly raised in the current arbitral proceedings, and (d) permissible under the governing arbitration agreements.[2]  In its accompanying Memorandum of Law (doc. 37), Patriot makes clear that the intent of the proposed amendment is to enforce its

---

[2]     Contemporaneously with filing its Motion for Leave to Amend, petitioner filed its Amended Petition to Compel Arbitration (doc. 35) without awaiting a ruling on its Motion.  This was procedurally improper.  Patriot is not entitled to amend its Petition as of right, but may only do so with prior leave of Court, which has not been granted.  The appropriate course of action would have been for Patriot to submit a proposed Amended Petition as an exhibit to its Motion, pursuant to Sections II.A.6. and II.E.5. of this District Court's Administrative Procedure for Filing, Signing and Verifying Documents by Electronic Means.  By filing the Amended Petition as a *fait accompli* prior to any disposition of the Motion for Leave to Amend, petitioner runs afoul of this Administrative Procedure, as well as Rule 15(a) of the Federal Rules of Civil Procedure.  Accordingly, the Amended Petition to Compel Arbitration (doc. 35) is **stricken**.

interpretation of the Stipulation of Arbitration signed by the parties in September 2006.  Patriot further requests that this Court preliminarily and permanently enjoin the Dixons from pursuing or prosecuting any class arbitration claims.  Patriot's request fails for two independent reasons.

## II.    Analysis.

### A.    *Petitioner Has Not Shown that Reopener is Appropriate.*

Although it faithfully recites and relies heavily on the liberal Rule 15(a) standard for amending pleadings, Patriot's filing glosses over the critical procedural detail that this case is over.  Indeed, it had been closed for 15 months before Patriot filed the instant Motion.  As pointed out previously, the parties did not request that the undersigned retain jurisdiction over this matter pending the outcome of arbitration, and this Court did not do so.  (*See* docs. 31, 33.)  The Rule 15(a) standard for amending pleadings has no application where a final decision disposing of the entire case on the merits has been entered.  *See Ahmed v. Dragovich*, 297 F.3d 201, 207-08 (3rd Cir. 2002) (explaining that liberality of Rule 15(a) "is no longer applicable once judgment has been entered," and that Rules 59 and 60 govern opening of final judgments).[3]  This principle is animated by pragmatic and persuasive considerations.  As one noted commentator explained, "To hold otherwise would enable the liberal amendment policy of Rule 15(a) to be employed in a way that is contrary to the philosophy favoring finality of judgments and the expeditious termination of litigation.  Furthermore, the draftsmen of the rules included Rules 59(e) and 60(b) specifically to provide a mechanism for those situations in which relief must be obtained after judgment and the broad amendment policy of Rule 15(a) should not be construed in a manner that would render those provisions meaningless."  Wright, Miller & Kane, 6 *Federal*

---

[3]        *See also Building Industry Ass'n of Superior California v. Norton*, 247 F.3d 1241, 1245 (D.C. Cir. 2001) ("Ordinarily postjudgment amendment of a complaint under Rule 15(a) requires reopening of the judgment pursuant to Rule 59(e) or 60(b)."); *Vielma v. Eureka Co.*, 218 F.3d 458, 468 (5th Cir. 2000) (Rule 15(a) discretion "narrows considerably after entry of judgment"); *Premo v. Martin*, 119 F.3d 764, 772 (9th Cir. 1997) ("While Rule 15(a) establishes that leave to amend should be 'freely given,' post-judgment motions to amend are treated with greater skepticism than pre-judgment motions."); *Lindauer v. Rogers*, 91 F.3d 1355, 1357 (9th Cir. 1996) (similar); *First Nat'l Bank of Louisville v. Continental Illinois Nat'l Bank and Trust Co. of Chicago*, 933 F.2d 466, 468 (7th Cir. 1991) (declaring that "the presumption in favor of liberality in granting motions to amend, Fed.R.Civ.P. 15(a), is reversed after judgment has been entered").

*Practice & Procedure Civ.2d*, § 1489; *see also Morse v. McWhorter*, 290 F.3d 795, 800 (6th Cir. 2002) (indicating that, with respect to post-judgment motions to amend, courts must consider interests of protecting the finality of judgments and the expeditious termination of litigation).

There can be no reasonable question that the undersigned's Order of November 9, 2005, compelling the parties to proceed to arbitration in accordance with the terms of their Arbitration Agreement, is a final, appealable order disposing of this entire case on the merits. *See Jackson v. Cintas Corp.*, 425 F.3d 1313, 1316 (11th Cir. 2005) (order compelling arbitration is a final, appealable decision when it disposes of the entire case on the merits and leaves no part of it pending); *Employers Ins. of Wausau v. Bright Metal*, 251 F.3d 1316, 1321 (11th Cir. 2001) ("because the arbitration order dispose[d] of all the issues framed by the litigation and le[ft] nothing for the district court to resolve" it was an appealable final order); *Carbajal v. H & R Block Tax Services, Inc.*, 372 F.3d 903 (7th Cir. 2004) (outright dismissal in favor of arbitration is a final decision entitling plaintiff to appeal). Patriot does not argue to the contrary. Thus, Patriot cannot invoke the liberal amendment policies animating Rule 15(a) but must instead show that reopener is appropriate pursuant to Rule 59(e) or Rule 60(b), and that the interests favoring reopener outweigh competing considerations of protecting the finality of judgments and the expeditious termination of litigation. Patriot has made no such showing, and has indeed articulated no arguments for why reopening this long-closed case is appropriate or permissible at this juncture. That omission is, in and of itself, a sufficient ground for denying the relief requested in Patriot's Motion for Leave to Amend and/or Supplement Petition.

**B.      The Requested Amendment is Futile.**

Even if Patriot had adequately demonstrated that reopening this long-terminated case is warranted under the circumstances present here, the requested amendment must be denied on futility grounds. *See generally Andrx Pharmaceuticals, Inc. v. Elan Corp., PLC*, 421 F.3d 1227, 1236 (11th Cir. 2005) (indicating that futility of amendment is among reasons justifying denial of leave to amend under Rule 15(a)). Careful review of Patriot's filings (including the Memorandum Brief (doc. 37) and the now-stricken Amendment (doc. 35)) reveals that its proposed new claims hinge on the Stipulation executed by the Dixons and Patriot in September 2006, and Patriot's contention that the Dixons are attempting to alter the contractually agreed arbitration procedures in a manner inconsistent with this Stipulation. The law is exceedingly

-4-

clear that arbitrators, and not courts, decide contract-interpretation and procedural issues relating to the method and manner of the arbitration proceedings.  As a plurality of the Supreme Court explained in the context of a dispute over whether an ambiguous arbitration agreement forbade class arbitration:

> "[T]he relevant question here is what kind of arbitration proceeding the parties agreed to.  ... It concerns contract interpretation and arbitration procedures. Arbitrators are well situated to answer that question.  Given these considerations, along with the arbitration contracts' sweeping language concerning the scope of the questions committed to arbitration, this matter of contract interpretation should be for the arbitrator, not the courts, to decide."

*Green Tree Financial Corp. v. Bazzle*, 539 U.S. 444, 452-53, 123 S.Ct. 2402, 156 L.Ed.2d 414 (2003); *see also Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 84, 123 S.Ct. 588, 154 L.Ed.2d 491 (2002) ("procedural questions which grow out of the dispute and bear on its final disposition are presumptively *not* for the judge, but for an arbitrator, to decide"); *Musnick v. King Motor Co. of Ft. Lauderdale*, 325 F.3d 1255, 1261 (11th Cir. 2003) (courts should "decide only such issues as are essential to defining the nature of the forum in which a dispute will be decided").

If the issue here were a gateway question of whether the Dixons and Patriot had entered into a valid arbitration arbitration agreement at all, that question might be properly directed to this Court to decide.  *See Terminix Int'l Co. v. Palmer Ranch Ltd. Partnership*, 432 F.3d 1327, 1331 (11th Cir. 2005) (recognizing that whether the parties have a valid arbitration agreement at all is for the court, not the arbitrator, to decide absent clear and unmistakable evidence that parties intended arbitrator to rule on this question); *Anders v. Hometown Mortg. Services, Inc.*, 346 F.3d 1024, 1027 (11th Cir. 2003) (recognizing that gateway matter concerning whether the parties have validly agreed to arbitrate their disputes is one that courts should decide).  But that is absolutely not the question posed by Patriot's proposed amendment; to the contrary, this Court has already ruled that the January 2004 Arbitration Agreement is valid and binding on both the Dixons and Patriot, and has referred this matter to arbitration.  (*See* doc. 31.)  The new issues that Patriot is asking this Court to decide concern the kind of arbitration proceeding that the parties should have (*i.e.*, to what extent does the Stipulation bind the Dixons and shape the arbitration proceedings, to what extent may the arbitration be conducted on a classwide basis,

etc.).  Under the Supreme Court's reasoning in *Bazzle* and *Howsam*, these kinds of procedural questions fall well within the purview of the arbitrator and are therefore matters committed to the arbitrator's judgment, rather than that of this Court.  *See Rollins, Inc. v. Garrett*, 2006 WL 1024166, *1 (11th Cir. Apr. 19, 2006) ("When a contract is silent as to whether it prohibits class arbitration, the arbitrator, rather than the court, must resolve the issue as a matter of state law."); *Gipson v. Cross Country Bank*, 354 F. Supp.2d 1278, 1285 (M.D. Ala. 2005) (construing *Bazzle* as meaning that, when arbitration provision does not expressly permit or prohibit class-wide arbitration, decision as to whether it forbids class arbitration is for arbitrator, not court); *Johnson v. Long John Silver's Restaurants, Inc.*, 320 F. Supp.2d 656, 668 (M.D. Tenn. 2004) (post-*Bazzle*, "this Court cannot determine whether a prohibition on class arbitration would effectively vindicate rights because this Court does not have the authority to decide whether the contract permits class arbitrations").[4]

In an attempt to mitigate the devastating impact of *Howsam* and *Bazzle* on its proposed amendment, Patriot insists that this Court has jurisdiction because the amendment raises the question of whether proposed class members were signatories to the Stipulation for Arbitration executed by the Dixons and Patriot, and federal courts have jurisdiction to decide whether a party is bound by an arbitration agreement.  (Memorandum Brief (doc. 37), at 5.)  This argument contorts the nature and scope of the proposed new issues beyond recognition.  It is plain to see that the Dixons and Patriot were the only parties to sign the Stipulation.  No one can or does dispute that point.  For Patriot to suggest that its proposed amendment is designed to litigate "whether the nonsignatory members of the proposed class were parties to said Stipulation" is to indulge a fiction through which Patriot attempts to extricate this case from the long shadow of *Howsam* and *Bazzle*.  The real issue that Patriot's amendment seeks to join is not whether myriad

---

[4]     To be sure, *Gipson* and certain other lower court decisions have distinguished *Bazzle* where an arbitration agreement includes an express prohibition on class arbitration.  *See Gipson*, 354 F. Supp.2d at 1285; *In re Cotton Yarn Antitrust Litigation*, 406 F. Supp.2d 585, 594 (M.D.N.C. 2005) (similar).  On its face, however, the Arbitration Agreement executed by the Dixons and Patriot has no such explicit prohibition; therefore, the Court need not consider whether to adopt the *Gipson* limitation on *Bazzle* or not, because the outcome would not be affected in any event.

unidentified class members did or did not sign the Stipulation.  They obviously did not.[5]  It is instead whether the Arbitration Agreement signed by the Dixons, as modified by the Stipulation, permits the Dixons to proceed in arbitration on behalf of a class.  As the agreements are silent on this point, this case falls squarely within the holdings of *Bazzle* and *Rollins*; therefore, that question is for the arbitrator, not this Court, to decide.  Patriot may, and apparently does, contest Dixon's attempts to expand the arbitral proceedings to include class allegations.  But that dissatisfaction does not entitle Patriot to circumvent the arbitrator and have this Court adjudicate the distinctly procedural / contract interpretation question of whether the parties agreed to arbitrate class allegations, all in contravention of unambiguous Supreme Court precedent and persuasive authority from the Eleventh Circuit.  As the parties have previously been advised, having referred this action to arbitration, this Court cannot and will not accept any invitation to become enmeshed in the minutiae of arbitration procedures and contract interpretations.  Such determinations are for the arbitrator to decide, at least in the first instance, and this Court will not reduce the arbitration to a hollow charade by interfering with and micromanaging what happens there at the behest of the party responsible for arbitration being compelled in the first place.

## III.   Conclusion.

For all of the foregoing reasons, Patriot's Motion for Leave to Amend and/or Supplement Petition to Compel Arbitration and to Re-open File (doc. 34) is **denied**, and its Amended Petition (doc. 35) filed without leave of court is **stricken**.

DONE and ORDERED this 15th day of March, 2007.


s/ WILLIAM H. STEELE
UNITED STATES DISTRICT JUDGE

---

[5]     The Dixons offer a strong argument that the AAA's Supplementary Rules for Class Arbitration apply here.  Assuming (without deciding) that those Supplementary Rules do apply, a question that bears on the propriety of class arbitration is whether the putative class members had entered into arbitration agreements that were "substantially similar" to that signed by the class representatives.  (Doc. 39, Exh. 2.)  In that event, the inquiry is not whether the other class members had actually signed the Stipulation, but is rather any arbitration agreements they did sign were "substantially similar" to those signed by the Dixons.  This framework underscores the flaw in Patriot's characterization of the issue.